Stephen B. Coleman (State Bar #021715)
**JACKSON LEWIS LLP**
2398 East Camelback Road, Suite 1060
Phoenix, AZ  85016
Tel. (602) 714-7044
Fax (602) 714-7045
Stephen.Coleman@jacksonlewis.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ally Financial, Inc., | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| vs. | |
| Donald Jones, an individual, | |
| Defendants. | |

Plaintiff, Ally Financial, Inc. ("Ally"), by its undersigned attorneys, complains against defendant Donald Jones ("Mr. Jones"), as follows:

**THE PARTIES**

1. Plaintiff Ally is a Delaware corporation that is headquartered in Detroit Michigan.  Ally was founded in 1919 as the General Motors Acceptance Corporation (GMAC), a provider of financing to automotive customers. Since then, the business has expanded to include insurance, direct banking, mortgage operations and commercial finance.

2. On information and belief, defendant Donald Jones is an individual who resides in Scottsdale, Arizona.

- 1 -

## JURISDICTION AND VENUE

3. This action arises under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §§ 1125(d).

4. Jurisdiction is expressly conferred on this Court under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

5. Mr. Jones resides or is domiciled, and he has engaged in wrongful acts of cyberpiracy in this judicial district as complained herein and, upon information and, therefore, Mr. Jones is subject to personal jurisdiction in this district.

6. Venue is proper in the United States District Court for the District of Arizona, pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to this lawsuit occurred in this district and Mr. Jones is subject to personal jurisdiction here.

## BACKGROUND

7. Ally Financial Inc. was founded in 1919 as the General Motors Acceptance Corporation (GMAC), a provider of financing to automotive customers. Since then, the business has expanded to include insurance, online banking, mortgage operations and commercial finance.

8. In 2009, the GMAC banking unit was re-branded as ALLY BANK. In 2010, the company was re-named ALLY FINANCIAL INC. and has continuously offered and marketed online banking products and services and auto financing under such trademarks as ALLY, ALLY BANK, and ALLY AUTO.

9. Ally Financial Inc. is one of the world's largest automotive financial services companies. The company offers a full suite of automotive financing products and services in key markets around the world.

10. In addition to maintaining office facilities, Ally expends significant resources in order to obtain, register, protect and maintain various domain names and associated websites that provide Ally with a strategic and beneficial online presence on

the internet, or in cyberspace. The promotion of these various domain names and websites are critical to the company's sales and marketing efforts.

11. In order to protect and preserve the tremendous strategic value of the company's Federal Registered trademarks, associated branded products and service offerings, avoid cyber visitor or customer misdirection, as well as to generate visitor traffic to company websites, Ally has secured and registered hundreds of domain names incorporating the Ally Marks, including but not limited to ally.com, allybank.com and allyauto.com (collectively the "Ally Domain Names").

12. Status documents from the U.S. Patent and Trademark Office evidence that Ally registered and is the owner of many trademarks and service marks incorporating the Ally name, including but not limited to "ally BANK", "ALLY BANK", "ALLY" and "ally", which are attached as Exhibit A. Such federal registrations are collectively referred to in this Complaint as the "Ally Federal Registrations" or "Federal Registered Marks" The Ally Federal Registrations and all related common law rights in these marks are referred to collectively as the "ALLY Marks."

13. The Ally Federal Registrations are in full force and effect on the U.S. Patent and Trademark Office's Principal Register. The Ally Federal Registrations constitute conclusive evidence of the validity of the marks, Ally's ownership thereof, and of Ally's exclusive right to use the registered marks in connection with the goods and services identified in the registrations (15 U.S.C. § 1115).

14. Ally's websites (the "Ally Websites") are accessible through certain Ally Domain Names. The Ally Websites advertise and promote Ally's products and services. Among other things, the Ally Websites provide product information and other important information for prospective and current customers. In addition, Ally allows customers to engage in online banking and other financial transactions. In fact, Money Magazine has named Ally "Best Online Bank" for 2011 and 2012. True

1 and correct copies of representative pages from the Ally Websites are attached as
2 Exhibit B.

3     15.    The Ally Marks represent an extremely well-known brand in the retail
4 and wholesale financing and banking industries.

5     16.    Ally promotes the Ally Marks and the goods and services sold under the
6 ALLY Marks extensively throughout the United States, and across the full range of
7 media, including television, radio, print, outdoor billboards, and online.

8     17.    Since 2009, Ally has expended substantial time, effort and money in
9 advertising, promoting and marketing services provided under or in connection with
10 the Ally Marks. As a result of extensive use and advertising, the ALLY Marks have
11 acquired valuable goodwill and are recognized as identifying goods and services
12 provided exclusively under the Ally Marks by Ally.

13     18.    Notwithstanding Ally's prior, continuous and extensive use of the Ally
14 Marks, Mr. Jones registered at least several domain names –
15 "ALLYBANKLOANS".com, allybancshares.com and allynationalbank.com thereby
16 unlawfully incorporating the Ally Marks (the "Infringing Domain Names").

17     19.    The Infringing Domain Names combine the Ally trademark with
18 banking services offered by Ally. In addition, Mr. Jones configured his Infringing
19 Domain Name[d] site "allybankloans.com" so that visitors expecting to arrive at
20 websites identified and covered by Ally's Marks are unwittingly re-directed to a cite
21 established by Mr. Jones and whose address is "veteransnationalbank.us.  Mr. Jones
22 was clearly aware of Ally and the ALLY Marks when he registered the Infringing
23 Domain Names.

24     20.    Despite being aware of his infringing and unlawful conduct, and even
25 after actually being informed in writing on several occasions of Ally's legitimate
26 business and legal claim to the Federal Registered Marks (including via a letter sent
27 by Ally's Legal Staff dated November 27, 2012: Attached Exhibit C), Mr. Jones not
28

- 4 -

only continued his rogue course of conduct, but Mr. Jones sought to strike a deal with Ally whereby he would surrender his Infringing Domain Names only in exchange for Ally's agreement to partner with him in a new banking/loan venture. When Ally rejected Mr. Jones' "partnership proposal", he upped the stakes by rigging his Infringing Domain Name site to re-direct already misled visitors expecting to reach Ally's Federal Registered Marked sites to the websites of Ally's competitor Chase Bank.

21. Mr. Jones, intended to engage in cyberpiracy as set forth in 15 U.S.C. § 1125(d)(1)(B)(i)(VI) by offering to "sell" Ally his illicit and Infringing Domain Names for financial gain without having used or having the intent to use the Infringing Domain Names for a legitimate purpose. The "monetization" of the domain names incorporating federally registered trademarks, like the Ally Marks, would unfairly trade off the goodwill of the trademarks and create a likelihood of consumer confusion or their being misled to believe that Veteran's National Bank and Ally are somehow affiliated.

22. In fact, Mr. Jones has not made any legitimate use of the Infringing Domain Names but instead, has combined the ALLY BANK trademark with the generic term "loans" in order to create a false affiliation with Ally, or to otherwise mislead or confuse consumers.

23. Mr. Jones refuses to transfer the Infringing Domain Names that he continues to own to Ally. Moreover, he continues to diminish the goodwill and value to be derived from Ally's Federal Registered Marks by intentionally and wantonly re-directing Ally's already misled visitors from his rogue site to the sites of Ally's competitors.

# COUNT I
## VIOLATION OF THE LANHAM ACT - ANTICYBERSQUATTING CONSUMER PROTECTION ACT

25. Ally incorporates the allegations of Paragraphs 1 through 24, inclusive, as if fully set forth herein.

26. At the time of Mr. Jones' registration of the Infringing Domain Name "allybankloans.com" (in or around June 2012), and the Infringing Domain Names allybancshares.com and allynationabank.com, each of the ALLY Marks was distinctive. Further, Ally's Marks were famous. Mr. Jones registered the Infringing Domain Names, which are confusingly similar to, or dilutive of, the Ally Marks owned by Ally with a bad faith intent to extort a joint venture agreement with Ally, or profit from Ally's rights in its Federal Registered Marks in violation of 15 U.S.C. § 1125(d).

27. Mr. Jones' bad faith intent to profit from his violation of Ally's Marks is demonstrated by numerous factors, including the following:

   (a) Mr. Jones has no trademark rights or other intellectual property rights in the Infringing Domain Names;

   (b) The Infringing Domain Names do not consist of the legal name of either Mr. Jones, or any other name by which Mr. Jones is known;

   (c) Mr. Jones has not used the Infringing Domain Names in connection with the bona fide offering of any goods or services prior to Ally's use and registration of the Ally Marks;

   (d) Mr. Jones has made no bona fide noncommercial or fair use of any of the Ally Marks in a site accessible under the Infringing Domain Names.

   (e) Mr. Jones intended to "monetize" the Infringing Domain Names and by doing so Mr. Jones also had the intent to divert consumers from Ally's online location to a site accessible under the Infringing

- 6 -

Domain Names that could harm the goodwill represented by the Ally Marks, either for Mr. Jones' commercial gain or with the intent to tarnish or disparage the Ally Marks, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site accessible under the Infringing Domain Names;

(f) Mr. Jones knew that the Infringing Domain Names were identical or confusingly similar to Ally's Marks; and

(g) Mr. Jones acquired multiple domain names that he knew where identical or confusingly similar to Ally's Marks or the trademark protected marks of other financial services companies and banks.

28. Mr. Jones' actions are willful, deliberate and done with knowledge of Ally's exclusive proprietary rights.

29. Ally has no adequate remedy at law. The unlawful activities of Mr. Jones described herein have caused, and if not enjoined will continue to cause, irreparable damage to the rights of Ally, to Ally's Federal Registered Marks, and to the competitive business interests, reputation and goodwill of Ally.

## **PRAYER FOR INJUNCTIVE AND OTHER RELIEF**

WHEREFORE Ally Financial, Inc. prays for the following relief:

A. Judgment for Ally and against Mr. Jones in an amount to be determined by the Court.

B. Order requiring Mr. Jones to immediately transfer the registration of any and all Infringing Domain Names and any other domain name that is identical or confusingly similar to any ALLY Marks to Ally.

C. That Mr. Jones and his officers, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, attorneys and all persons in active concert and/or participation with him who receive notice be

permanently enjoined and restrained from:

    i) Registering, trafficking, using, or maintaining the registration of the Infringing Domain Names or any other domain name that is identical or confusingly similar to any of Ally's Federal Registered Marks;

    i) Using the ALLY Federal Registered Marks, the mark or name ALLY, or any confusingly similar mark, name, domain name or colorable imitation thereof, in connection with Mr. Jones' activities or business which may in any way mislead or confuse anyone as to the source, affiliation or sponsorship of such business or website or domain;

    ii) Otherwise infringing or diluting the distinctive quality of the ALLY Marks;

    iii) Injuring Ally's business reputation and the goodwill associated with Ally's ALLY Marks and from otherwise unfairly competing, directly or indirectly, with Ally; and

    iv) Causing a likelihood of confusion or misunderstanding as to source, sponsorship, association, affiliation, approval or certification with or by Ally, or engaging in conduct tending to create a false commercial impression of Ally's products or services or any other conduct which tends to pass off Mr. Jones' products or services as those of Ally or creates a likelihood of confusion or misunderstanding or false representation.

D. That Mr. Jones be directed to file in Court, and to serve on Ally, within thirty (30) days after entry of an order granting Ally injunctive relief, a report in writing, under oath, setting forth in detail the manner and form in which he has complied with the injunction.

E. That Mr. Jones be required to pay Ally statutory damages of not less than $1,000 and not more than $100,000 per domain name, as the Court determines just under 15 U.S.C. § 1117(d).

F. That this Court award the maximum statutory damages to fully compensate Ally for the willful and wanton nature of Mr. Jones' wrongful acts.

G. The Court find that this is an "exceptional" case pursuant to 15 U.S.C. § 1117 and award reasonable attorneys' fees to Ally.

H. That this Court grant Ally such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Ally demands trial by jury on all matters and issues so triable.

Respectfully submitted this 22nd day of January 2013.

**JACKSON LEWIS LLP**

By: /s/Stephen B. Coleman
Stephen B. Coleman
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

/s/Valerie J. Armstrong

4849-3045-5058, v. 1